Elizabeth Tveter et al.

    v.                              Case No. 16-cv-329-PB

Derry Cooperative School District
SAU # 10, et al.

## REPORT AND RECOMMENDATION

Pro se plaintiffs Elizabeth Tveter and Holly Tveter[1] have filed a complaint against multiple defendants,[2] alleging various violations of federal law (Doc. No. 1). This matter is before the undersigned magistrate judge for preliminary review to determine whether the complaint asserts any claim upon which relief might be granted. See 28 U.S.C. § 1915(e)(2)(B); LR 4.3(d)(2).

## Standard of Review

In determining whether a pro se pleading states a claim, the court construes the pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Disregarding any legal conclusions, the court considers whether the factual content in

---

[1] As mother and next friend of Elizabeth Tveter.

[2] Derry Cooperative School District, Pinkerton Academy High School, Laura H. Nelson, Gerald Griffin Morse, Christopher Harper, Glenn Ahrens, Heather Haas Derochers, Timothy Powers, Jennifer Resmini, and David Siff.

the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Background

Elizabeth Tveter is a disabled adult who, at the time her complaint was filed, was enrolled at Pinkerton Academy High School ("Pinkerton").  Holly Tveter is Elizabeth's mother and is also disabled.  As plaintiffs share a last name, the court will refer to them by their first names in this Report and Recommendation, for clarity.  Pinkerton is an independent high school which contracts with the Derry Cooperative School District SAU #10 ("School District") to provide public high school education for the School District's students.  The School District and Pinkerton will be collectively referred to in this Report and Recommendation as the "institutional defendants."

Laura H. Nelson is employed by the School District as superintendent of schools ("Superintendent Nelson").  Gerald Griffin Morse is the Headmaster at Pinkerton ("Headmaster Morse").  Heather Haas Derochers is the 504 Coordinator at Pinkerton ("Coordinator Derochers").  Until July 1, 2016, Christopher Harper was Dean of Academics at Pinkerton ("Dean Harper"), Glenn Ahrens was Dean of Students at Pinkerton ("Dean

Ahrens"), Timothy Powers was Athletic Director at Pinkerton ("Athletic Director Powers"), and Jennifer Resmini was the varsity field hockey coach at Pinkerton ("Coach Resmini"). David Siff is an attorney who served as the hearing officer at a due process hearing discussed in greater detail below ("Attorney Siff"). These defendants will be referred to collectively as the "individual defendants" in this Report and Recommendation. The individual defendants are sued in both their official and personal capacities.

## I.    **Elizabeth's Experience at Pinkerton**

Plaintiffs allege that on January 5, 2014, Elizabeth suffered a severe traumatic brain injury during athletic training. The injury left Elizabeth cognitively impaired, and she was diagnosed as legally disabled. Elizabeth took an extended medical leave of absence from Pinkerton, finally returning full time in August of 2015 under a 504 plan.

Prior to her injury, Elizabeth was a starter on the Pinkerton varsity field hockey team. Elizabeth was medically cleared to return to the field hockey team in September of 2015. Elizabeth was required to wear protective head gear, but was otherwise cleared to fully participate. Plaintiffs contend that Elizabeth's playing time was nevertheless restricted and that when Holly complained, it was further restricted.

Plaintiffs allege that once Elizabeth returned to the field hockey team, other girls on the team started to bully her. Elizabeth was not bullied prior to becoming disabled, and non-disabled students were not bullied.  Both Elizabeth and Holly filed numerous complaints regarding this bullying, but none of the defendants intervened, allowing the bullying to continue and escalate.

On October 29, 2015, Elizabeth was reinjured during field hockey practice when another member of the team struck a ball toward Elizabeth, who was standing on the sidelines putting on her protective headgear, and that ball struck Elizabeth in the head.  Plaintiffs claim that Elizabeth suffered a severe concussion, which necessitated Elizabeth taking a second medical leave of absence from Pinkerton from October 30, 2015, until February of 2016.

During this second leave of absence, Elizabeth and Holly made multiple requests for tutoring, direct instruction, class work, handouts, teacher's notes, and homework assignments.  The defendants denied those requests without providing written notice or holding a 504 team meeting.  Elizabeth was thus unable to teach herself or receive instruction from a private tutor. Plaintiffs informed the defendants on multiple occasions that the defendants were violating Elizabeth's 504 plan, but the defendants refused to include Elizabeth or Holly in the

decision-making process.

On January 4, 2016, Elizabeth was cleared to return to Pinkerton for forty-five minutes per day to attend a physical education class for disabled students. On January 7, 2016, a student aide for the class, who had previously bullied Elizabeth, struck Elizabeth in the head, reinjuring Elizabeth's brain. Plaintiffs allege that this event and the October 29, 2015 event resulted in Elizabeth possibly sustaining permanent brain injuries.

In the spring of 2016, Elizabeth was a member of the Pinkerton varsity tennis team. Plaintiffs claim that Elizabeth was required to wear a red shirt while the other members of the team all wore white shirts, which resulted in Elizabeth being excluded from team photographs.

## II. **Sexual Harassment**[3]

Plaintiffs allege that Elizabeth was subject to sexual harassment by Athletic Director Powers. Plaintiffs claim that Athletic Director Powers would attend Elizabeth's field hockey

---

[3] Though several of the allegations related to purported sexual harassment appear to correspond with events discussed above, the few dates provided for the sexual harassment allegations are difficult to reconcile with the dates provided for the previously-discussed events. Moreover, plaintiffs have failed to provide any concrete timeframe for several of their allegations concerning purported sexual harassment. Thus, both the relative timeframe of these events and their specific chronology are unclear.

games and tennis matches and stare at Elizabeth.  They further
allege that during tennis practices and matches, Athletic
Director Powers would follow Elizabeth from court to court.
Holly filed sexual harassment complaints concerning this
behavior with Pinkerton, the School District, Athletic Director
Powers, Dean Ahrens, Headmaster Morse, Superintendent Nelson,
and the United States Department of Education Office of Civil
Rights.  According to the complaint, investigations were started
in April and May of 2015, a meeting was held in May of 2015, and
a safety plan was created for Elizabeth requiring Athletic
Director Powers to stay away from her.  Plaintiffs claim that
Athletic Director Powers nonetheless continued to attend
Elizabeth's games and matches and interacted with her at social
events.  Plaintiffs further claim that they have never received
final decisions from the April and May of 2015 investigations,
despite multiple requests.

Plaintiffs contend that Athletic Director Powers was
observed lingering in the lobby and peering through the window
of a classroom in which Elizabeth was attending summer class.
Holly requested that Pinkerton, the School District, Headmaster
Morse, and Superintendent Nelson require that Athletic Director
Powers use an alternative door and not walk by that window while
Elizabeth was in class.  The request was refused.  A meeting was
held on July 16, 2016 concerning new concerns about Athletic

Director Powers's conduct toward Elizabeth.  An investigation into the new conduct was ongoing at the time this cause of action was filed.

## III. **Due Process Hearing**

A due process hearing regarding Elizabeth's education was held before Attorney Siff.  Holly served as Elizabeth's representative at the hearing.  Plaintiffs allege that Attorney Siff was deliberately chosen by the School District and Superintendent Nelson to gain advantage in the proceedings because Attorney Siff was a "harsh" former marine and Holly had a history of being the victim of domestic violence.

Plaintiffs allege that Attorney Siff was biased against them.  In support of that contention, plaintiffs assert that Attorney Siff: limited plaintiffs' ability to present evidence and cross-examine witnesses, while not placing similar restrictions upon the other side; allowed irrelevant records into evidence, but did not allow plaintiffs to submit rebuttal evidence; denied plaintiffs financial assistance in preparing for the hearing; refused to provide plaintiffs with a copy of the hearing recording; and, despite knowing that Holly herself was disabled, interrupted Holly, limited Holly's questioning, argued with Holly openly at the hearing, and threatened Holly.

## Discussion

The complaint is not presented in chronological order and does not include a clear delineation of individual counts. After thorough and generous review of the complaint, the court construes the complaint as asserting claims alleging violations of: (1) the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1491 ("IDEA"); (2) Titles II and V of the Americans with Disabilities Act, 42 U.S.C §§ 12101, et seq. ("ADA"); (3) Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504" or "Rehabilitation Act"); (4) Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX"); and (5) the Fourteenth Amendment's Equal Protection Clause and Due Process Clause, brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs allege disability discrimination, sexual harassment, and retaliation.

## I.    Pro Se Plaintiffs

Both Elizabeth and Holly are identified as plaintiffs in this case.  To the extent Holly is seeking to bring claims on her own behalf, the court will address such claims in the discussion below.  To the extent, however, Holly is seeking to stand in as a representative for Elizabeth in this action, she may not do so.  Elizabeth personally signed the complaint and,

based on the representations in the complaint, had reached the age of majority at the time this action was filed.  Though the complaint alleges that Elizabeth is disabled, there is no indication that Elizabeth has been deemed incompetent or is otherwise unable to represent herself.  See Fed. R. Civ. P. 17(c).  Even if Elizabeth were incompetent and Holly had been appointed her legal guardian, Holly, as a layperson, could not represent Elizabeth's interests in this court pro se.  See LR 83.6(b); see also Katz v. McVeigh, 931 F. Supp. 2d 311, 332 (D.N.H. 2013), aff'd, Nos. 13-1453, 13-1529 (1st Cir. Sept. 23, 2014).  Thus, Elizabeth must either represent herself in this action or appear through counsel.  Katz, 931 F. Supp. 2d at 332.

## II.  **IDEA**

The court turns to plaintiffs' claims under the IDEA. Plaintiffs allege that Elizabeth was denied a free and appropriate public education ("FAPE"), in violation of the IDEA. The IDEA "is a comprehensive education statute which seeks to ensure that children with disabilities receive a [FAPE] designed to meet their unique needs."  Rose v. Yeaw, 214 F.3d 206, 209 (1st Cir. 2000) (internal ellipsis and quotation marks omitted) (quoting 20 U.S.C. § 1400(d)(1)(A)).  State or local agencies receiving federal funds under subchapter II of the IDEA are required "to establish and maintain procedures to ensure that

children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of [a FAPE] by such agencies." Id. (ellipsis omitted) (quoting § 1415(a)).

"In New Hampshire, if the parent or guardian of a disabled child believes that the child has been denied a FAPE, he or she may request a due process hearing before the New Hampshire Department of Education." Pass v. Rollinsford Sch. Dist., 928 F. Supp. 2d 349, 353 (D.N.H. 2013) (citing § 1415(f)(1)(A)). The limitations period to request such a hearing is two years from the date on which the alleged violation was or reasonably should have been discovered. N.H. Rev. Stat. Ann § 186-C:16-b, I. "Following [the] hearing, the hearing officer must issue a final decision, accompanied by findings of fact." Pass, 928 F. Supp. 2d at 353 (citing §§ 1415(h), (i)(1)(A)).

"Any party aggrieved" by the hearing officer's decision may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); see also Pass, 929 F. Supp. 2d at 353. Under New Hampshire law, such an action must be filed "within 120 days from receipt of the final decision." N.H. Rev. Stat. Ann § 186-C:16-b, IV.

Plaintiffs' IDEA claims may proceed in part. As students and parents can equally constitute "parties aggrieved" under the IDEA, see Maroni v. Pemi-Baker Reg'l Sch. Dist., 346 F.3d 247, 250 (1st Cir. 2003), both Elizabeth and Holly may bring claims

under the IDEA, each on their own behalf.  The complaint itself
plausibly alleges that the defendants denied Elizabeth a FAPE,
at least during her second leave of absence.[4]  The court
accordingly directs service of plaintiffs' claims on the
institutional defendants and on the individual defendants in
their official capacities.[5]

The IDEA does not, however, allow for recovery against
individual defendants to the extent they are sued in their
individual/personal capacities.  See Diaz-Fonseca v. Puerto
Rico, 451 F.3d 13, 28-29 (1st Cir. 2006); see also Nieves-
Márquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003)
(holding that monetary damages, including punitive damages, are
not available under the IDEA).  The district judge should
therefore dismiss plaintiffs' IDEA claims to the extent they are
asserted against the individual defendants in their personal
capacities.

## III. **ADA and Rehabilitation Act**

The court next considers plaintiffs' claims under the ADA

---

[4] The court makes this determination without comment on
whether plaintiffs have fully exhausted their administrative
remedies and, if so, timely filed this action.

[5] The court directs service of these claims and any others
that may proceed, as discussed herein, in an Order issued
simultaneously with this Report and Recommendation.

and Rehabilitation Act.[6]  Construed liberally, the complaint appears to allege claims of disability discrimination and retaliation under these provisions.  Under the ADA, disability discrimination claims implicate Title II, see Parker v. Universidad de P.R., 225 F.3d 1, 4 (1st Cir. 2000), whereas retaliation claims fall under Title V, see Oliveras-Sifre v. P.R. Dep't of Health, 214 F.3d 23, 26 (1st Cir. 2000).  Section 504 proscribes both disability discrimination, see Lesley v. Hee Man Chie, 250 F.3d 47, 52-53 (1st Cir. 2001), and, through its implementing regulations, retaliation, see D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 40 (1st Cir. 2012) (citing 28 C.F.R. § 42.503(b)(1)(vii)).

Before turning to the substance of these claims, the court must first address whether Titles II and V of the ADA and Section 504 provide for individual liability.  Though there is no binding authority on this issue, the First Circuit has arguably implied that no such liability exists. See Roman-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 52 (1st Cir.

---

[6] The court addresses these claims, and the ones that follow, without comment on the extent to which they are impacted by plaintiffs' IDEA claims, including, for example, whether they are subject to IDEA exhaustion.  See, e.g., Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 754-55 (2017); M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico, 528 F.3d 9, 14-15 (1st Cir. 2008); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 60 (1st Cir. 2002); Weber v. Cranston Sch. Comm., 212 F.3d 41, 49-50 (1st Cir. 2000).

2011) (holding that no individual liability exists under Title I of the ADA); Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 290 (1st Cir. 2006) (noting that several courts have determined that Title II does not provide for individual liability, but not reaching this issue). And those district courts in this circuit that have directly addressed this issue have followed the majority of other circuits in concluding that individual liability is not available under the ADA or Section 504. See, e.g., DeCotiis v. Whittemore, 842 F. Supp. 2d 354, 363 n. 5 (D. Me. 2012); Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110, 117 (D.P.R. 2011); Abbott v. Town of Salem, No. 05-cv-127-SM, 2006 WL 276704, at *4 (D.N.H. Feb. 2, 2006). Following the reasoning of those courts, the court recommends that the district judge dismiss the ADA and Section 504 claims to the extent they are brought against the individual defendants in their personal capacities.

A.  Disability Discrimination

Title II of the ADA "prohibits discrimination against persons with disabilities by 'public entities.'" Parker, 225 F.3d at 4 (citations omitted). This provision is modeled on Section 504, and "essentially extends the reach of § 504 to state and local governmental entities that do not receive federal financial assistance." Id. at 4, n. 2; see also 29 U.S.C. § 794(a) and 42 U.S.C. § 12132 (using comparable language

to proscribe disability discrimination).  Accordingly, when
applying Title II and Section 504, courts will consider prior
legal decisions concerning either of those two provisions
interchangeably.  See Parker, 225 F.3d at 4 (citations omitted).

A party seeking relief under Title II must establish:

(1) that [s]he is a qualified individual with a
disability; (2) that [s]he was either excluded from
participation in or denied the benefits of some public
entity's services, programs, or activities or was
otherwise discriminated against; and (3) that such
exclusion, denial of benefits, or discrimination was
by reason of [her] disability.

Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006).

Similarly, to prevail on a discrimination claim under Section

504, a party must prove:

(1) that she is disabled; (2) that she sought services
from a federally funded entity; (3) that she was
otherwise qualified to receive those services; and (4)
that she was denied those services solely by reason of
her . . . disability.

Lesley, 250 F.3d at 52-53 (internal quotation marks omitted).

The complaint alleges that, due to her disability,
Elizabeth was excluded from participation in, and denied the
benefits of, the services, programs, and/or activities offered
by the School District and/or Pinkerton that Elizabeth both
requested and was otherwise qualified to receive.  These
allegations include her treatment as a member of the varsity
field hockey and tennis teams when she returned from her leaves
of absence, her treatment by various defendants during her

14

second leave of absence, and the defendants' responses when informed that Elizabeth was being bullied by other students due to her disability. Elizabeth's disability discrimination claims may accordingly proceed under both the ADA and Section 504.

Whether Holly may also bring disability discrimination claims under Title II and Section 504 requires an additional layer of analysis. As Holly is also disabled, the court must address whether the complaint sufficiently alleges claims under these provisions based on Holly's own disability. Additionally, the court must address whether Holly may premise these claims on Elizabeth's disability based on a concept known as "associational standing."

Though the First Circuit has not broadly discussed associational standing,[7] the Eleventh Circuit has held that "[i]t is widely accepted" that third parties may bring claims under Section 504 and the ADA "when they are injured because of their association with a disabled person." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1143 (11th Cir. 2014) (collecting cases). This decision has been cited approvingly by district courts in this circuit, including in this district. See Collins v. Dartmouth-Hitchcock Med. Ctr., No. 13-cv-352-JD,

_____

[7] The First Circuit has addressed associational standing in the context of retaliation claims under the Rehabilitation Act. See Weber, 212 F.3d at 48. It has not, however, addressed such standing in the context of disability discrimination.

2015 WL 268842, at *8 (D.N.H. Jan. 21, 2015); see also Ortiz v. Caparra Ctr. Assocs., LLC, No. CV 14-1914 (BJM), 2016 WL 1092482, at *4 (D.P.R. Mar. 21, 2016).  In the absence of controlling appellate authority to the contrary, the court finds these decisions to be persuasive.

When construed liberally, the complaint alleges that Holly faced discrimination during the due process hearing due to her own disability.  Holly may accordingly proceed with a disability discrimination claim on that basis.  The complaint also alleges that Holly, along with Elizabeth, was excluded from the decision-making process related to Elizabeth's 504 plan during Elizabeth's second leave of absence.  Holly may proceed with a disability discrimination claim based on this allegation due to her association with Elizabeth.  There are no other allegations in the complaint that support disability discrimination claims asserted on behalf of Holly.

Elizabeth and Holly's disability discrimination claims under Title II and Section 504 may proceed in part, as discussed herein.  The court directs service of these claims on the institutional defendants and the individual defendants in their official capacities.  The district judge should dismiss these claims to the extent they are asserted against the individual defendants in their personal capacities.

B.    Retaliation

"Both the Rehabilitation Act . . . and the ADA prohibit
retaliation against any person, whether disabled or not, for
opposing disability-based discrimination made unlawful by those
statutes."  D.B. ex rel. Elizabeth B., 675 F.3d at 40 (internal
citations omitted).  "A plaintiff need not succeed on a
disability discrimination claim in order to assert a claim for
retaliation."  Id. at 40–41 (citation omitted).

Retaliation claims under the Rehabilitation Act and the ADA
are analyzed under the same standard.  Id. at 41.  The burden-
shifting framework articulated in McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 801–03 (1973) applies.  Id.  To state a
prima facie claim of retaliation, a plaintiff must allege that
(1) she engaged in protected conduct, (2) she was subjected to
an adverse action by the defendant, and (3) there was a causal
connection between the protected conduct and the adverse action.
Id.  "An adverse action is one that might well dissuade a
reasonable person from making or supporting a charge of
discrimination."  Id. (citations omitted).

Elizabeth's retaliation claims under the ADA and the
Rehabilitation Act may proceed.  When construing the complaint
liberally, Elizabeth appears to allege four distinct retaliatory
acts by the defendants: first, that the defendants deliberately
reduced Elizabeth's field hockey playing after she and Holly

17

complained that her playing time was being unnecessarily limited when she returned from her first leave of absence; second, that the defendants refused to include Elizabeth and Holly in the decision-making process after they complained that the defendants were violating Elizabeth's 504 plan; third, that the defendants refused to intervene when Elizabeth and Holly complained that Elizabeth was being bullied due to her disabilities; and fourth, that the defendants failed to take appropriate steps in response to Elizabeth and Holly's complaints that she was being sexually harassed by Athletic Director Powers. These allegations are sufficient to warrant serving Elizabeth's ADA and Rehabilitation Act retaliation claims on the institutional defendants and the individual defendants in their official capacities.

Holly's retaliation claims may also proceed, though on a more limited basis. When construed liberally, the complaint alleges that Holly was retaliated against when she complained of disability discrimination during the due process hearing. The complaint further alleges that Holly was retaliated against when she complained that the defendants were violating Elizabeth's 504 plan during Elizabeth's second leave of absence. See Weber, 212 F.3d at 48-49 (holding that the parent of a disabled child has standing to pursue a retaliation claim under the Rehabilitation Act when the parent is retaliated against due to

complaints relating to her child's education).  Holly may proceed with retaliation claims on these bases.

The court accordingly directs service of plaintiffs' retaliation claims under Title V of the ADA and Section 504 of the Rehabilitation Act on the institutional defendants and the individual defendants in their official capacities, as discussed above.  The district judge should dismiss these claims to the extent they are asserted against the individual defendants in their personal capacities.

## IV.  **Title IX**

Next, the court considers plaintiffs' claims under Title IX.  As relevant here, Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX contains an implied private right of action, under which both damages and injunctive relief are available.  See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009).  The complaint appears to allege Title IX claims for sexual harassment and retaliation.  Before turning to these claims, the court must briefly address a few general issues.

First, it is well-established that Title IX only authorizes

private actions against the recipient of federal funding itself, and not individuals in their official or personal capacities. See Lipsett v. Univ. of P.R., 864 F.2d 881, 900 (1st Cir. 1988); see also Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 640 (1999).  Thus, the district judge should dismiss the Title IX claims to the extent they are alleged against the individual defendants in their official and personal capacities.

Additionally, "only participants of federally funded programs — and not the participants' parents — have standing to bring claims under Title IX."  Doe v. Oyster River Co-op. Sch. Dist., 992 F. Supp. 467, 481 (D.N.H. 1997); see also Phillips v. Anderson Cty. Bd. of Educ., 259 F. App'x 842, 843 n. 1 (6th Cir. 2008) (per curiam).  Thus, Holly does not have standing to bring Title IX claims here, and the district judge should dismiss these claims to the extent they are asserted on Holly's behalf.

A.  Sexual Harassment

Sexual harassment is a form of discrimination for Title IX purposes, and Title IX proscribes harassment with sufficient clarity to serve as the basis of a damages action.  See Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 206 (D.N.H. 2009) (citing Davis, 526 U.S. at 649-50).  Funding recipients may only be held liable for damages, however, "where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and

objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. (internal quotation marks omitted) (quoting Davis, 526 U.S. at 650).

Here, the complaint alleges that Holly complained to the School District and Pinkerton on multiple occasions regarding Athletic Director Powers's behavior toward Elizabeth. The complaint can further be construed to allege that Athletic Director Powers's actions interfered with Elizabeth's education. Finally, the complaint alleges that the School District and Pinkerton allowed Athletic Director Powers's behavior to continue, and that additional investigations into his behavior were ongoing at the time the complaint was filed. At this preliminary stage, these allegations are sufficient for Elizabeth's sexual harassment claim to proceed against the School District and Pinkerton under Title IX. The court accordingly directs service of this claim on the institutional defendants.[8]

B.  Retaliation

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional

---

[8] The court reaches this determination without comment on whether Elizabeth has adequately exhausted her remedies under Title IX.

sex discrimination encompassed by Title IX's private cause of action."  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).  To state a prima facie case for Title IX retaliation, a plaintiff must allege facts sufficient to show that (1) "she engaged in activity protected by Title IX," (2) "that the alleged retaliator knew of the protected activity," (3) "that the alleged retaliator subsequently undertook some action disadvantageous to the actor," and (4) "that a retaliatory motive played a substantial part in prompting the adverse action."  Frazier, 276 F.3d at 67 (citation omitted).

The complaint alleges that Elizabeth, through Holly, made multiple complaints to the institutional defendants regarding Athletic Director Powers's behavior, but that the institutional defendants ultimately allowed this behavior to continue. Elizabeth's Title IX retaliation claim may proceed on this basis.  The court therefore directs service of this claim on the institutional defendants.

**V.   Section 1983**

Finally, the court turns to plaintiffs' claims under Section 1983.  To state a claim for relief in a Section 1983 action, a party must "establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed 'under color of

state law.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40,
49-50 (1999). When construed liberally, the complaint appears
to seek to bring claims under Section 1983 for violations of
equal protection and due process. The court will briefly
address each in turn.

A.   Equal Protection

"'The Equal Protection Clause contemplates that similarly
situated persons are to receive substantially similar treatment
from their government.'" Davis v. Coakley, 802 F.3d 128, 132
(1st Cir. 2015) (citation omitted). "To establish an equal
protection claim, a plaintiff needs to allege facts showing that
'(1) the [plaintiff], compared with others similarly situated,
was selectively treated; and (2) that such selective treatment
was based on impermissible considerations such as race,
religion, intent to inhibit or punish the exercise of
constitutional rights, or malicious or bad faith intent to
injure [the plaintiff].'" Id. at 132-33 (citation omitted).
"Proof of . . . discriminatory intent or purpose is required to
show a violation of the Equal Protection Clause." Vill. of
Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265
(1977). Because the physically disabled are not a suspect class
for equal protection purposes, plaintiff must also show that
there was no rational basis for the defendants' conduct. Bd. of
Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001);

Toledo v. Sanchez, 454 F.3d 24, 33–34 (1st Cir. 2006);

Montemerlo v. Goffstown Sch. Dist. SAU #19, No. 12-CV-13-PB,

2013 WL 1352066, at *2 (D.N.H. Apr. 2, 2013).

The equal protection claims largely appear to mirror many
of the claims discussed above, in that the complaint alleges
that the defendants subjected Elizabeth to disability
discrimination, sexual harassment, and retaliation.  The
complaint further alleges that other students (particularly,
non-disabled students) were not subjected to similar treatment.
The court concludes that the facts asserted in the complaint are
minimally sufficient to allow the equal protection claims
brought by Elizabeth to proceed against all defendants, and
directs service accordingly.

There is not, however, anything in the complaint to support
a claim that Holly's equal protection rights were violated by
any of the defendants.  Indeed, there is no indication that
Holly was ever treated differently than any similarly-situated
individuals, or that this treatment was based on an
impermissible consideration.  See Davis, 802 F.3d at 132.  The
district judge should therefore dismiss the equal protection
claim to the extent it is brought by Holly.

    B.  Due Process

The complaint appears to allege two independent due process
violations.  First, plaintiffs contend that their procedural due

rights under the IDEA and/or Section 504 were violated when the defendants denied Elizabeth services and benefits during her second leave of absence without providing plaintiffs with written notice or holding a 504 team meeting.  Second, plaintiffs assert that their procedural due process rights under the IDEA and/or Section 504 were violated due to Attorney Siff's actions during the due process hearing.  As both plaintiffs have certain procedural rights at least under the IDEA, as discussed above, see Maroni, 346 F.3d at 250, these claims may proceed. The court directs service accordingly.


## Conclusion

For the foregoing reasons, the court recommends that the district judge dismiss the following claims:

- Both plaintiffs' claims under the IDEA, ADA, and Section 504, as brought against the individual defendants in their personal capacities.
- Elizabeth's claims under Title IX, as brought against the individual defendants in either their official or personal capacities.
- Holly's claims under Title IX as brought against all defendants.
- Holly's equal protection claim under Section 1983 as brought against all defendants.

In an Order issued simultaneously with this Report and Recommendation, the court directs service on the defendants of the remaining claims asserted in the complaint.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).


_____
Andrea K. Johnstone
United States Magistrate Judge


April 25, 2017

cc:  Elizabeth Tveter, pro se
     Holly Tveter, pro se